UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| LEANDER CARTER, | ) | |
| MICHAEL BRENT, | ) | |
| WILLIE JOHNSON, | ) | |
| CHARLES KIDD, | ) | |
| STANLEY MILLER, | ) | |
| OSCAR PATTON, | ) | |
| CARL ROGERS, | ) | |
| JOE SHERROD, | ) | |
| JOHN THEIS, | ) | |
| PASCUAL VIDEGARAY, | ) | |
| LUIS VILLAVICENCIO-SE, | ) | |
| JASON WARD, | ) | 17 cv 3546 |
| EDWARD HARRIS, | ) | |
| DELMAR GRAY, | ) | Hon. Judge R. Pallmeyer |
| DENNIS McARDLE, | ) | |
| BLACKIE VEACH, | ) | Jury Trial Demanded |
| HAROLD OLIVER, | ) | |
| NICHOLAS ANDREWS, | ) | |
| CHRISTOPHER ALEXANDER, | ) | |
| BRAYONE MURFF, | ) | |
| CARLOS JENKINS, | ) | |
| DALE ANDERSON | ) | |
| ANTHONY LAWSON | ) | |
| KEITH MIDDLETON | ) | |
| RAYMOND ORTIZ and | ) | |
| ALVIN WILLIAMS | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| ALFONSO DAVID, M.D., | ) | |
| ANDREW TILDEN M.D., | ) | |
| JOHN TROST, M.D. | ) | |
| KUL SOOD, M.D. | ) | |
| ARTHUR FUNK, M.D., | ) | |
| SHERRI LYNN, | ) | |
| LOUIS SHICKER, M.D. | ) | |
| MICHAEL PUISIS, M.D. | ) | |
| UNKNOWN DOCTORS | ) | |
|    (JANE/JOE DOES 1-10) | ) | |
| UNKNOWN MEDICAL DIRECTORS | ) | |
|    JANE/JOE DOES 11-15) | ) | |

| | |
|---|---|
| UNKNOWN HEALTHCARE | ) |
| UNIT ADMINISTRATORS | ) |
| (JANE/JOE DOES 16-20) | ) |
| and | ) |
| UNKNOWN WEXFORD EMPLOYEES | ) |
| (JANE/JOE DOES 21-25) | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, M.D., ANDREW TILDEN M.D., JOHN TROST, M.D., KUL SOOD, M.D. AND ARTHUR FUNK, M.D.'S MOTION FOR SEVERANCE OF PLAINTIFFS' CLAIMS**

NOW COMES the Defendants, WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, M.D., ANDREW TILDEN M.D., JOHN TROST, M.D., KUL SOOD, M.D. AND ARTHUR FUNK, M.D., by and through their attorneys, BOLLINGER CONNOLLY KRAUSE, LLC, and for its Motion for Severance. Defendants respectfully requests this Honorable Court to grant their Motion for Severance pursuant to Fed. R. Civ. P. Rule 21.

**I.     INTRODUCTION**

Plaintiffs allege that the claims alleged in plaintiffs' amended complaint arise out of §1983 civil rights claims. (Dkt. #45, ¶41). Plaintiffs also allege that "this action properly lies within this judicial district under the provisions of 28 U.S.C. §1391(b) and that they all suffer from untreated inguinal hernias. (Dkt. #45, ¶43, 45). Plaintiffs further allege that the "defendants, with deliberate indifference to plaintiffs' physical pain and suffering, have systematically denied plaintiffs a relatively inexpensive and necessary surgical procedure to repair their hernias." (Dkt. #45, ¶50).

In Plaintiffs' factual allegations, Plaintiffs allege that they are state prisoners who are housed or were previously houses in five different Illinois Department of Corrections Institutions across the state of Illinois. (Dkt. #45, ¶44). Plaintiffs' Amended Complaint alleges that Plaintiff Leander Carter is incarcerated at the Shawnee Correctional Center, Plaintiff Michael Brent is

2

incarcerated at the Pontiac Correctional Center, Plaintiff Willie Johnson is incarcerated at Pontiac, Plaintiff Charles Kidd is incarcerated at Pontiac, Plaintiff Stanley Miller has been incarcerated at Pontiac, Plaintiff Oscar Patton is incarcerated at Pontiac, Plaintiff Carl Rogers is incarcerated at Pontiac, Plaintiff Joe Sherrod is incarcerated at Pontiac, Plaintiff John Theis is incarcerated at Pontiac, Plaintiff Pascual Videgaray is incarcerated at Pontiac, Plaintiff Luis Villavicencio-se is incarcerated at Pontiac, Plaintiff Jason Ward is incarcerated at Pontiac, Plaintiff Edward Harris is incarcerated at Pontiac, Plaintiff Delmar Gray is incarcerated at Pontiac, Plaintiff Dennis McArdle is incarcerated at Pontiac, Plaintiff Blackie Veach is incarcerated at Pontiac, Plaintiff Harold Oliver is incarcerated at Pontiac, Plaintiff Dale Anderson is incarcerated at Pontiac, Plaintiff Anthony Lawson is incarcerated at Pontiac, Plaintiff Keith Middleton is incarcerated at Pontiac, Plaintiff Raymond Ortiz is incarcerated at Pontiac, Plaintiff Alvin Williams, is incarcerated at Pontiac, Plaintiff Nicholas Andrews is incarcerated at Menard, Plaintiff Christopher Alexander, has been incarcerated at both Pontiac and the Menard Correctional Center, Plaintiff Brayone Murff, is incarcerated at the Lincoln Correctional Center, Plaintiff Carlos Jenkins, is incarcerated at the Hill Correctional Center. Dkt. #45, ¶1-26). According to the factual allegations in plaintiffs' amended complaint, twenty-two of the plaintiffs reside or did reside in Pontiac. (Dkt. #45, ¶1-26).

Defendant Wexford is alleged to be a private company that provides medical services at various Illinois Department of Corrections facilities, and was responsible for providing medical services at the Shawnee, Pontiac, Menard, Lincoln and Hill correctional facilities. (Dkt. #45, ¶27-28). Defendant Funk is alleged to be a Wexford Regional Medical Director for the Northern Region of Illinois. (Dkt. #45, ¶29). Defendant David was alleged to render medical services to inmates at the Shawnee facility. (Dkt. #45, ¶31). Defendant Lynn was alleged to have acted as

the Healthcare Unit Administrator of the Shawnee facility. (Dkt. #45, ¶32), Defendant Tilden is alleged to have provided medical services to inmates at the Pontiac facility. (Dkt. #45, ¶33). Defendant Trost is alleged to have rendered medical services to inmates at the Menard facility. (Dkt. #45, ¶34). Defendant Sood is alleged to have rendered medical services to inmates at the Hill facility. (Dkt. #45, ¶35). Defendant Shicker was alleged to be the Agency Medical Director of IDOC in Chicago, Illinois. (Dkt. #45, ¶36). Defendant Puisis was alleged to be the Agency Medical Director of IDOC in Chicago, Illinois. (Dkt. #45, ¶37). The Unknown Doctors are alleged to be employed by Wexford and rendering medical services to inmates at Shawnee, Pontiac, Menard, Lincoln and/or Hill facilities. (Dkt. #45, ¶38). The Unknown Medical Directors alleged in plaintiffs' complaint are alleged to be additional Agency Medical Directors of the IDOC in Chicago, Illinois. (Dkt. #45, ¶39). Lastly, the Unknown Healthcare Unit Administrators alleged in plaintiffs' petition are alleged to have acted as Healthcare Administrators at Shawnee, Pontiac, Menard, Lincoln and/or Hill correctional facilities. (Dkt. #45, ¶40).

Count I of Plaintiffs' complaint alleges that the plaintiffs suffered cruel and unusual punishment by Defendant's Shicker, Puisis and Unknown Medical Directors acting in the capacity of the Agency Medical Director of the IDOC in Chicago, Illinois. (Dkt. #45, ¶68-74). Count II of Plaintiff's complaint alleges that plaintiffs suffered cruel and unusual punishment by Defendants Wexford, Funk and Unknown Wexford Employees. (Dkt. #45, ¶75-83). Count III of plaintiffs' complaint alleges that the plaintiffs suffered cruel and unusual punishment by Defendants David, Tilden, Trost, Sood and Unknown Doctors. (Dkt. #45, ¶84-92). Lastly, Count IV of plaintiffs' complaint alleges that plaintiffs suffered cruel and unusual punishment by Defendants Lynn and Unknown Healthcare Unit Administrators acting in the capacity as the Healthcare Unit Administrator of the Shawnee, Pontiac, Menard, Lincoln and/or Hill. (Dkt. #45,

¶93-101).

## II. APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure Rule 20, governs the issue of joinder in federal cases. Under Rule 20, a person may join in one action as plaintiffs if they "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A-B). "As to Rule 20's first prong, the Seventh Circuit has not yet fashioned a definitive standard for determining what constitutes a single transaction or occurrence." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 694 (N.D. Ill. 2009). As such, district courts examine the first prong of Rule 20 utilizing a case-by-case analysis. *Berry v. Ill. Dep't of Human Servs*, 2001 U.S. Dist. LEXIS 1041 at *59-60 (N.D. Ill. Feb. 1, 2001) (citing *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000)). Ultimately, the decision whether or not to sever an action lies within the trial court's discretion. *Id*. "Misjoinder occurs when the parties fail to satisfy either of the requirements for permissive joinder under Rule 20." *McDowell*, 645 F. Supp. 2d 690 at 694. "In the event the Court finds that joinder is improper, Rule 21 comes into effect and allows the Court to add or drop a party, or sever any claim against another party." *Id*. Under Federal Rules of Civil Procedure Rule 21, a court may sever any claim against a party for misjoinder of a party. Fed. R. Civ. P. 21.

## III. ARGUMENT

### A. Plaintiffs' Claims Should Be Severed Into Separate Suits Based on the IDOC Correctional Institutions Plaintiffs Allege They Were Housed And Therefore Where They Received Medical Treatment.

This Court should sever plaintiffs' claims for failing to meet the threshold requirements under Federal Rules of Civil Procedure Rule 20 to properly join plaintiffs in an action. In this instance, plaintiffs have failed to establish that their claims arise under the same transaction,

5

occurrence or series of transactions or occurrences as required by Rule 20. Fed. R. Civ. P. 20(a). Defendants do not contest that plaintiffs' complaint asserts a common question of law, as plaintiffs allege Eighth Amendment violations and 42 U.S.C. § 1983 claims. (Dkt. #45, ¶41) However, since the plaintiffs fail to meet both prongs of Fed. R. Civ. P. Rule 20, this Court should sever plaintiffs' claims into separate suits or in the alternative five separate suits based on IDOC correctional facilities plaintiffs allege they were housed and therefore where they would have received their medical treatment.

This issue of severance is not an issue of first impression for this Court. This case is analogous to *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690 (N.D. Ill. 2009), where this Court examined the issue of misjoinder concerning a group of plaintiffs. In *McDowell*, four plaintiffs worked for the defendant. *Id*. at 692. The plaintiffs reported to different supervisors and worked in different offices located in different states, but alleged that the defendant engaged in a pattern of intentional discrimination. *Id*. The plaintiffs allege that their claims arise out of the same series of transaction because their claims arise from a "company-wide discriminatory policy." *Id*. at 695. This Court disagreed. *Id*. This Court reasoned that "though Morgan Stanley's alleged discriminatory conduct may have occurred because of a company-wide policy, that conduct was rooted in individual decisions, made by different supervisors, at different times, and in four different offices." *Id*. at 695. This Court found that "Plaintiffs, in effect, are not only challenging an alleged corporate policy at Morgan Stanley, but also the discretionary decisions of their individual supervisors that put that policy into effect. These decisions cannot go unnoticed. Plaintiffs dispute that the success of their claims depends on the outcome of those discretionary and, as alleged, intentional decisions." *Id*. This Court further found that "the existence of an alleged company-wide policy likely cannot outweigh the numerous other factors

that courts consider in this context. The alleged discretionary and intentional decisions are not somehow homogeneous or intertwined; rather, each individual Plaintiff was subject to different decisions, at different times, in different locations, and, presumably, in different contexts." *Id*.

This Court further examined the risk of confusion and prejudice inherent in trying the case in a single action, before a single jury. *Id*. at 696. This Court found that if a single jury were "to hear a combination of the unique and otherwise distinct circumstances that underlie each of the Plaintiffs' claims, the risk of confusion and prejudice to Morgan Stanley would be substantial, while certain individual Plaintiffs might also be disadvantaged." Id. at 696. This Court reasoned that "at trial, the parties would likely call to testify the individual Plaintiffs, their supervisors, co-workers and witnesses from each individual office. Such testimony is highly individualized, as the jury would encounter entirely different people, testifying as to one individual Plaintiff." *Id*. This Court further reasoned that "the application of Morgan Stanley's umbrella policy in one office may not reflect the same application of that same policy in another." *Id*.

In this instance, the plaintiffs do not all reside within the same correctional institution. (Dkt. 45, ¶1-26). In fact, the plaintiffs reside in five separate institutions located throughout the Central and Southern District Court jurisdictions, including Pontiac, Shawnee, Menard, Lincoln and Hill Correctional Centers. (Dkt. 45, ¶1-26). Additionally, plaintiffs allege that Defendant Wexford institutes policies and procedures for the care of inmates. (Dkt. #45, ¶54-67). Specifically, plaintiffs allege that Defendant Wexford institutes cost saving policies regulating hernias and surgical procedures, which are implemented by "Defendant Doctors." (Dkt. #45, ¶60-63). Assuming arguendo that such a cost-cutting policy did exist, as plaintiffs acknowledge, the policy and procedure itself does not provide care or treatment, but rather treating doctors.

7

(Dkt. #45, ¶63). As plaintiffs allege in their amended complaint, Defendant's Dr. David, Dr. Tilden, Dr. Trost and Dr. Sood provided medical services at the various correctional institutions throughout Illinois. (Dkt. #45, ¶31, 33-35). Under plaintiffs theory, those individuals, in addition to Defendant Sherri Lynn, Unknown Doctors (Jane/Joe Does 1-10), Unknown Health Care Unit Administrators (Jane/Joe Does 16-20) and Unknown Wexford Employees (Jane/Joe Does 21-25) as well as Defendant Medical Administrators, carried out the alleged Wexford policies and procedures on an individualized basis in the care of each plaintiff. (Dkt. #45, ¶63). Assuming arguendo the existence of a cost cutting policy as plaintiffs allege, the care and treatment of each plaintiff constituted conduct "rooted in individual decisions" made by medical professionals, in 26 sperate instances across five different correctional institutions, at different times, based on the individualized medical needs of 26 different inmates. *Id*. at 695; (Dkt. #45, ¶1-26, 31, 33-35). Each of the 26 individual plaintiffs would be of different ages, size, medical history and have varied medical comorbidities that would affect their unique individualized, unique medical status. As such, the plaintiffs in this instance, identically to *McDowell*, were "subject[ed] to different decisions, at different times, in different locations, and, presumably, in different contexts" by different treating defendant physicians. *Id*. Simply alleging the same type of injury does not impute a presumption that each plaintiff presented with an identical hernia with identical symptoms, necessitating identical courses of treatment, with identical timelines for recovery.

Furthermore, in *Adkins v. Ill. Bell Tel. Co.*, 2015 U.S. LEXIS 40246 (N.D. Ill. March 24, 2015), 82 plaintiffs alleged that they performed unpaid, pre-shift work while working for defendant. *Id*. at 36-38. The defendants argued that the plaintiffs were not properly joined because the "claims do not arise from 'the same transaction, occurrence, or series of transactions

8

or occurrences' under Rule 20(a)(1).'" *Id*. at 33-34. Plaintiffs worked in 48 different locations and reported to over 160 different supervisors. *Id*. at 37. A total of 79 of the plaintiffs alleged that they performed unpaid work, which included a variety of different tasks. *Id*. The defendants argued that the plaintiffs failed to establish the same transaction or series of transactions required by law to join in one suit because each plaintiff reported to multiple supervisors and worked at different locations. *Id*. This Court found that "Because Plaintiffs claims will require individual fact finding and discovery, different witnesses and testimony, and separate questions to answer, the Court finds that their claims do not arise out of the same transaction, occurrence, or series of transactions or occurrences." *Id*. at 44-45 (internal citations omitted).

Similarly, litigating plaintiffs' claims in this case would involve the care and treatment of 26 different plaintiffs. (Dkt. #45, ¶1-26). Furthermore, the plaintiffs allege that they were housed in five different correctional institutions with different medical doctors assigned to each correctional institution. (Dkt. #45, ¶1-40). Therefore, based on plaintiffs' allegations, different defendants treated the numerous plaintiffs, which would require different witnesses for each claim. (Dkt. #45, ¶1-40); *Id*. at 44-45. Just as in *Adkins*, litigating plaintiffs' claims in a single suit would "require individual fact finding and discovery, different witnesses and testimony, and separate questions." *Id*.

Therefore, this Court should sever the plaintiffs' claims into 26 separate lawsuits or in the alternative sever plaintiffs' claims into five separate claims, organized by the correctional institutions each plaintiff was housed at the time relevant to the complaint. Otherwise, "at trial, the parties would likely call to testify the individual Plaintiffs . . . and witnesses from each individual [institution]. Such testimony is highly individualized, as the jury would encounter entirely different people, testifying as to one individual Plaintiff." *Id*. at 696. As this Court found

9

in *McDowell*, "to hear a combination of the unique and otherwise distinct circumstances that underlie each of the Plaintiffs' claims, the risk of confusion and prejudice to [defendants] would be substantial, while certain individual Plaintiffs might also be disadvantaged." *Id*. at 696. Therefore, this Court should sever the plaintiffs' claims.

Even though this Court has disfavored severance in cases involving inmates in certain circumstances, such as *Robinson v. Dart*, 2014 U.S. Dist. LEXIS 7696 (N.D. Ill 2014), there are distinguishing factors in this matter that support severance. In *Robinson*, four plaintiffs filed an amended complaint pursuant to 42 U.S.C. Sections 1983 and 1988 against defendant, the Cook County Sherriff and Cook County. *Id*. at *1. The defendants in that case moved to dismiss the complaint as well as sever certain plaintiff alleging that the plaintiffs were improperly joined in the action pursuant to Federal Rule of Civil Procedure 21. *Id*. at *1-2. Three of the four plaintiff's in *Robinson*, allege that they contracted the same disease while housed in the same division of the Cook County Jail during the same time period. *Id*. at *12. Plaintiff's also alleged "the existence of a widespread policy or practice of failing to adequately treat detainees with infectious disease. *Id*. at *13. The Court found that "plaintiff's claims are logically related in that they are challenges to the Jail's health and sanitation policies to which [three of the four plaintiffs] were subjected to by virtue of being in custody." *Id*. at *13. This Court found that the plaintiffs' claims arose out of the same transaction or occurrence for purposes of joinder. *Id*. This Court however, severed the fourth plaintiff's claim from the others, finding that his "'do not involve the same medical issues and would require different medical evidence and different witnesses.'" *Id*. at *14; (quoting *Odom v. Hiland*, 2012 U.S. Dist. LEXIS 176013 at *2 (W.D. Ky. Dec. 12, 2012).

In this instance, the plaintiffs do not all reside within the same correctional institution nor did they ever all reside in the same institution at the same general time. In fact, the plaintiffs reside in five separate facilities located throughout the Central and Southern District Court jurisdictions, including Pontiac, Shawnee, Menard, Lincoln and Hill Correctional Centers. (Dkt. #45, ¶1-26). Furthermore, Defendants Alfonso David, M.D., Andrew Tilden M.D., John Trost M.D. and Kul Sood M.D., all work or worked at different correctional institutions. While plaintiffs allege that Wexford has policies in place concerning the care and treatment of hernias, the continuity of care is non-existent. Unlike in Robinson, where all the plaintiffs resided in the same division of the Cook County Jail, these plaintiffs reside in five different locations. (Dkt. #45, ¶1-26) While it is a reasonable inference that a byproduct of the plaintiffs in *Robinson* all residing in the same division of the Cook County Jail were exposed to the dame conditions and that they had access to the same medical treating physicians, the same inference is not reasonable in this instance. *Robinson*, 2014 U.S. Dist. LEXIS 7696 at *12. Rather, plaintiffs plead that the named defendants were assigned to specific locations, with no overlap in treating physicians from institution to institution. (Dkt. #45) Therefore, unlike in *Robinson*, these plaintiffs did not receive care or treatment from the same individuals. (Dkt. #45, ¶31, 33-35).

Additionally, plaintiff alleges that Defendant Wexford institutes policies and procedures for the care of inmates. (Dkt. #45, ¶54-67). Assuming arguendo that such a policy did exist, the policy and procedure itself does not provide the medical care or treatment. The policy does not examine for the existence of symptoms for a hernia, type or degree of hernia, or consider each individuated unique health status and comorbidity. Individual physicians treating the plaintiffs examine the patients and prescribe medically necessary treatments. In this instance, that would be four separate treating physicians, Defendant's Dr. David, Dr. Tilden, Dr. Trost, Dr. Sood,

providing treatment at four different locations on 26 different plaintiffs. Despite alleging a policy and procedure, the plaintiffs' have failed to allege that the application of such a policy was administered consistently among the various facilities and furthermore, among the individual plaintiffs. While the alleged policy or procedure can provide a guideline, the treatment of medical condition ultimately requires an independent medical decision by a physician individualized to a specific patient's needs.  There have been no factual allegations put forth that suggest that all of the plaintiffs have even been medically recommended for a surgery, much less denied a surgical procedure as a result of the alleged policy.  Therefore, the Defendants maintain that given the facts and circumstances of his case, there are in fact five separate groups of plaintiffs that can properly allege five transactions or occurrences. Fed. R. Civ. P. 21.

Furthermore, prison litigation alleging deliberate indifference does not necessitate a finding of permissible joinder, where courts within the 7th Circuit have found that joinder of prisoner's claims is impermissible when the injuries are not the result of the same series of transactions. While not binding on this Court, *Smith v. Bond Cnty. Jail,* 2017 U.S. Dist. LEXIS 38797 (S.D. Ill. Mar. 17, 2017), provides persuasive authority where a 7th Circuit district court examined claims brought by eight different plaintiffs against the Sheriff and county jail alleging that they were all exposed to mold in different locations within the jail. *Id*. at *2. In *Smith*, the court examined the issue of misjoinder of plaintiffs, and ultimately found that the "joinder of the parties in a single action going forward is not appropriate." *Id*. at *10. The court found that, despite all plaintiffs alleging similar types of injuries resulting from exposure to mold, "how the alleged facts apply to each individual plaintiff is bound to differ, so each plaintiff's particular situation likely involves a unique 'transaction, occurrence, or series of transactions or occurrences.'" *Id*. Highlighting the differences between plaintiffs' claims and the fact that they

all do not arise out of the same series transaction, occurrence or series of transitions or occurrences, the court went on to reason that for some of the plaintiffs, "there is no guarantee they suffered the same symptoms or the same degree of exposure to mold; one may have had mold throughout her cell while the other was exposed to a negligible amount the majority of the time." *Id*. at *11.

Similarly, while all plaintiffs allege that they experienced inguinal hernias while incarcerated in this instance, they do not, and cannot, allege that they all experienced the exact same size, type, location of a hernia let alone the same symptoms, progression of symptoms, physical limitations or the same type of treatment. (Dkt. #45, ¶44-45) While all plaintiffs were issued written discovery, only a select few have partially complied with those discovery requests, none of which signed verification pages. While plaintiffs' amended complaint was devoid of any detail, it is those interrogatory responses that demonstrate unequivocally that the amended complaint is comprised of not a series of transactions or occurrences but uniquely distinct and separate circumstances. Foremost, the plaintiffs do not claim to have been diagnosed with alleged inguinal hernias in the same years, by the same individuals or even at the same correctional center. Leander Carter was first informed of his alleged hernia in 2003 at Western Illinois Correctional Center by a Dr. Brown (See Exhibit A, ¶2), Anthony Lawson was allegedly informed in 2010 at Menard Correctional Center (See Exhibit B, ¶2), Harold Oliver was allegedly informed in 2004 at Menard Correctional Center (See Exhibit E, ¶2), Raymond Ortiz was allegedly informed in 2017 (See Exhibit F, ¶2) and the other plaintiffs who are unable to remember the details of their allegedly initial diagnoses (See Exhibits A-L, ¶2).

Furthermore, none of the plaintiffs identify the exact same treating physicians much less allege the same group of defendants treated their alleged medical conditions. (See Exhibits A-L,

13

¶2, 4A-G). Additionally, none of the plaintiffs can allege the same type of treatment, even when it comes to something as minor as medication management. While plaintiffs like Leander Carter, Willie Johnson, Anthony Lawson and others allege that they are not and have never taken medication in relation to the injuries they allege in their complaint, other plaintiff's allege a significantly different type of treatment. (See Exhibits A-L, ¶7) Dennis McArdle alleges he was prescribed Motrin (See Exhibit D, ¶7), Harold Oliver cant remember what medications he received but also notes that he received Tylenol or similar medication (See Exhibit E, ¶7, 16B), Oscar Patton was prescribed Ibuprofen, Naproxen and other medications twice daily (See Exhibit G, ¶7), and John Theis was prescribed Ibuprofen twice daily (See Exhibit I, ¶7).

The plaintiffs are also distinguished in the locations of their treatment, not only within the Department of Corrections but also at outside treating facilities. While some plaintiffs allege they have never received medical treatment outside of the Illinois Department of Corrections, Harold Oliver alleges to have received medical treatment at Lawrenceville Memorial Hospital and in Bellville, Illinois (See Exhibit E, ¶5C, 22), Oscar Patton alleges to have received medical treatment at Memorial Hospital of Carbondale along with Christopher Alexander(See Exhibit G, J ¶22). Lastly, and most notably, Harold Oliver admitted to receiving a surgical procedure to repair his hernia at Lawrenceville Memorial Hospital. (See Exhibit E, ¶17B) Oliver's surgical procedure alone solidifies the fact that these plaintiffs all have medical conditions that require personalized medical care and treatment.

As the plaintiffs' interrogatory answers demonstrate, same as the plaintiffs in *Smith*, "how the alleged facts apply to each individual plaintiff is bound to differ." *Smith*, 2017 U.S. Dist. LEXIS 38797 at *10. And since "there is no guarantee [plaintiffs] suffered the same symptoms" there is also no guarantee that each plaintiff suffered from the same severity of

symptoms, received the same treatment, type of treatment or prognosis. *Id*. at *11. Given the demonstrated variables in identified in their treatment and the likelihood of other variables between plaintiffs and their individualized treatment from different individual treating physicians, like in *Smith*, this Court should find that the plaintiffs are improperly joined. *Id*. at *10; (See Exhibits A-L); (Dkt. #45, ¶44-45). Therefore, Defendants respectfully request that this Court grant its Motion for Severance of Plaintiffs' claims into twenty-six separate suits or in the alternative into five separate claims, based on which correctional institutions plaintiffs allege they were housed during the relevant times of their amended complaint.

## IV.   CONCLUSION

WHEREFORE, the Defendants, DEFENDANTS WEXFORD HEALTH SOURCES, INC., ALFONSO DAVID, M.D., ANDREW TILDEN M.D., JOHN TROST, M.D., KUL SOOD, M.D. AND ARTHUR FUNK, M.D., respectfully request this Honorable Court to grant their Motion for Severance pursuant to Fed. R. Civ. P. Rule 21.

    Respectfully Submitted,

    WEXFORD HEALTH SOURCES, INC.,
    ALFONSO DAVID, M.D., ANDREW TILDEN
    M.D., JOHN TROST, M.D., KUL SOOD, M.D.
    AND ARTHUR FUNK, M.D.

    By:   __/s/ Christopher Miller__
    *One of the Attorneys for Defendants*

Robert S. Tengesdal (#6288650)
Christopher M. Miller (#6321129)
BOLLINGER CONNOLLY KRAUSE LLC
500 West Madison Street Suite #2430
Chicago, IL 60661
Ph: (312) 253-6200
rtengesdal@bollingertrials.com
cmiller@bollingertrials.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2018, I caused the foregoing document to be filed electronically with the Clerk of the Court through ECF and to be served upon all counsel of record by filing the same with the CM/ECF system.

By: /s/  Christopher M. Miller