IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEANDER CARTER, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 19-cv-63-DWD |
| | ) |
| WEXFORD HEALTH SOURCES, INC., and | ) |
| ALFONSO DAVID, | ) |
| | ) |
|        Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Leander Carter, an inmate in the custody of the Illinois Department of Corrections, alleges that Defendants Alfonso David and Wexford Health Sources, Inc. were deliberately indifferent to his serious medical needs by denying his repeated requests for surgery to repair an inguinal hernia that causes him severe, and often debilitating, pain. Now before the Court are Defendants' motions for summary judgment on the merits of Carter's claims. (Docs. 157, 160). Carter, through his appointed counsel, responded to both motions (Doc. 179), and Defendants replied. (Docs. 183, 184). For the reasons delineated below, Wexford's motion for summary judgment is granted, and Defendant David's motion is denied.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Plaintiff Leander Carter was incarcerated at Shawnee Correctional Center. Defendant Wexford Health Sources, Inc. is a private corporation that has contracted with the Illinois Department of Corrections to provide

medical services to inmates at various correctional institutions, including at Shawnee. Defendant Alfonso David is a licensed physician employed by Wexford who served as the Medical Director at Shawnee.

Carter was first diagnosed with an inguinal hernia on February 24, 2003, while he was incarcerated at Western Illinois Correctional Center. An inguinal hernia occurs when tissue, usually abdominal fat or intestine protrude through a weak layer into the inguinal canal. Medical professionals treat inguinal hernias differently depending on whether it is reducible, incarcerated, or strangulated. Such a hernia is considered incarcerated when intraabdominal contents poke through a defect in the abdominal wall and cannot be reduced back into the abdomen. A hernia is deemed strangulated when the neck of the hernia is choked so that blood is restricted. According to Defendants, absent extreme pain or an adverse impact on daily activities, only incarcerated or strangulated hernias require surgery, and Carter has not had any such complications arise.

Carter was transferred to Shawnee in December 2008. He was first seen by Defendant David on November 30, 2011. Dr. David's notes refer to the hernia as small and reducible and do not reflect that Carter complained of pain. (Doc. 158-8, p. 151-52). Carter's medical records show that he did not see Dr. David again until March 31, 2016. The records from the visit do not mention his hernia. (Doc. 158-8, p. 231-32). On May 26, 2016, Carter was seen by a nurse for pain caused by his hernia. He reported that he was having to reduce the hernia up to 15 times each day and described his pain as a 7 out of 10. He was offered acetaminophen and ibuprofen for his pain, but his medical records show that he declined the medications. (Doc. 158-8, p. 233).

The nurse referred Carter to a doctor, and Dr. David examined him on May 31, 2016. Dr. David noted that the hernia had to be reduced 10-15 times per day, but he advised Carter to return to the healthcare unit if he had complications like an incarcerated or strangulated hernia. (Doc. 158-8, p. 234). Carter was again seen by Dr. David on June 29, 2016. Dr. David did not note that Carter reported pain to him. (*Id.* at 138). Dr. David did not see Carter again until August 5, 2019. According to Dr. David's notes in Carter's medical records, Carter requested stool softeners after complaining about his hernia worsening, but Dr. David did not note any complaints of pain. (Doc. 161-10, p. 291-92). After this visit, Carter did not return to the healthcare unit until March 6, 2020.

In contrast to notes in his medical records, Carter testified that at his deposition that he has suffered pain from his hernia for years. He explained that when he talked to Dr. David, his symptoms were never noted in his records. He described his hernia as giving him trouble when he coughs, sleeps, urinates, has bowel movements, walks, and sleeps. He also disputed the idea that it was easily reducible because he explained that, after being reduced, it immediately pops back out. (Doc. 158-4, p. 6). Carter maintains that he told Dr. David that he was in pain, and he explained that he asked for stool softeners because defecating was too painful due to the hernia. (*Id.* at 24-25). He explained that there were time periods where he stopped seeking medical treatment because the healthcare unit would not treat his hernia with anything more than aspirin, and he was tired of sitting and waiting for hours to be given aspirin, which did not help his pain. Instead, Carter only went to the healthcare unit regarding his hernia when he was in excruciating pain. (*Id.* at 26). He maintains that he told Dr. David he was in pain each

time he saw him and that he told him that over-the-counter pain medicines did not help. (Doc. 180, p. 3). He also claims that he asked Dr. David to refer him for surgical repair during every visit. (*Id.* at 4). Dr. David never referred Carter to collegial review for consideration of hernia repair surgery.

Defendants hired an expert, R. Lawrence Reed, II, M.D., to review and evaluate Carter's medical care. Dr. Reed's overall opinion was that Carter's medical treatment was adequate, though he reviewed mainly documentary evidence and not Carter's deposition in which his pain was described. Dr. Reed's report indicated that inguinal hernias do not require emergency surgical management unless they are incarcerated, obstructed, or strangulated. Elective repair is warranted if the hernia is painful, interferes with daily activities, or is enlarging. Painless hernias that do not impact daily activities and that are not enlarging are not appropriate for elective surgical repair. (Doc. 158-14, p. 8-10). Dr. Reed evaluated Carter's hernia as failing to demonstrate pain, failing to interfere with daily activities, and non-enlarging based on the medical records. Despite these findings, Carter maintains that he was not referred to collegial review as a result of widespread Wexford custom or policy to cut costs by refusing collegial review and denying surgical hernia repairs for hernias like his that are painful but are not incarcerated or strangulated.

### LEGAL STANDARDS

I. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See*

*Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED. R. CIV. PROC. 56(a)). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

II.   **Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits cruel and unusual punishments, and the deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to

evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)(citation omitted).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(citation omitted). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015)(citing *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir.2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer*, 511 U.S. at 828 (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm")(internal quotation marks omitted)(emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Greeno*, 414 F.3d at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference.

*Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Hammond*, 123 F. Supp. 3d at 1086 (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016))(alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *See Berry*, 604 F.3d at 441.

## ANALYSIS

The parties do not dispute that Plaintiff's hernia is an objectively serious medical condition. Defendant David instead argues that he did not act with deliberate

indifference towards Carter's medical needs. The parties' descriptions of Carter's hernia are vastly different. Defendants routinely refer to Carter's hernia as one that does not cause pain or interfere with daily activities, based in large part on Dr. David's notes and their alleged completeness. Carter, however, maintains that his hernia does cause him significant pain and does interfere with important daily activities. He also insists that he reported his pain to healthcare unit personnel, including Dr. David on multiple occasions even though Dr. David's notes fail to reflect the complaints.

The Seventh Circuit addressed a claim similar to Carter's in *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513 (7th Cir. 2019). In *Wilson*, the prisoner plaintiff had a small, reducible hernia and differences between medical notes and the prisoner's pleas for help for pain presented a factual dispute that the Court concluded must be resolved by a trier of fact. *Id.* at 519-20. The contention that a prisoner must mention his pain or his hernia on any sort of consistent basis also was rejected as a basis for summary judgment. *Id.* at 520.

As was the case in *Wilson*, a reasonable juror crediting Carter's testimony could find that Dr. David was confronted several times with a patient with a hernia that was causing a degree of pain that interfered with daily activities. Despite the complaints, Dr. David did not refer Carter for collegial review to consider elective hernia repair surgery. Refusals to refer an inmate for medical care can create a question of material fact as to whether a doctor was deliberately indifferent. *See, e.g.*, *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding that a reasonable juror could conclude that a doctor who refused to refer an inmate to a specialist over a two-year period was deliberately indifferent).

Here, a reasonable juror could conclude that Carter visited the healthcare unit when his hernia caused increased pain or complications for his daily life and that the refusal to provide treatment beyond recommending manual reduction of the hernia rose to the level of deliberate indifference. As such, there are disputes of material fact that preclude the entry of summary judgment in favor of Defendant David.

Carter also claims that he was never referred for collegial review, and, as a result, for elective hernia repair surgery, due to an unconstitutional policy or practice implemented by Wexford. The doctrine of *respondeat superior* does not apply in § 1983 cases. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). As such, Carter cannot succeed on his claims against Wexford without establishing one of the three factors laid out in *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In *Monell v. Dept. of Social Services of the City of New York*, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality. 436 U.S. 658, 690–91 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Wexford. *See Shields*, 746 F.3d at 789.

Liability under *Monell* may be shown three ways.  First, a plaintiff may establish that the unconstitutional action "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Glisson v. Indiana Dept. of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017)(quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff might prove that a

custom was created by "'those whose edicts or acts that may fairly be said to represent official policy.'" *Glisson*, 849 F.3d at 379 (quoting *Monell*, 436 U.S. at 690 – 91).

The final way a plaintiff may demonstrate liability pursuant to *Monell* is by establishing a widespread custom. *Glisson*, 849 F.3d at 379. Liability may extend to customs "so permanent and well settled as to constitute a custom or usage with the force of law" even though they received no formal approval. *Monell*, 436 U.S. at 91 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167 – 68 (1970)). A widespread custom may be established by evidence of policymaking officials' knowledge and acquiescence to the unconstitutional practice. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993). Sufficient evidence may include proof that the practice was so "long standing or widespread" that it would "support the inference that policymaking officials 'must have known about it but failed to stop it.'" *Id.* (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). The corporate policy or rule must be shown, however, to be the "moving force of the constitutional violation." *Iskander*, 690 F.2d at 128 (quoting *Monell*, 436 U.S. at 694).

Carter does not argue directly that Wexford maintains a written policy that is unconstitutional. In terms of the written policy for hernia repair surgery, Wexford's medical guidelines state:

    A. Patients with stable abdominal walls are not, in general, candidates for herniorrhaphy and will be monitored and treated with appropriate non-surgical therapy.

    B. Patients with incarcerated or strangulated abdominal wall hernias are candidates for herniorrhaphy and will be referred urgently for surgical evaluation.

> C. Hernias which do not impact on an inmate's [activities of daily living] in this setting would not be consideration [sic] for repair.
>
> Decisions regarding patient suitability for consideration of abdominal wall herniorrhaphy must be made on a case-by-case basis. These recommendations are intended only as a guide for the site physician and are not intended to replace hands-on clinical judgment.

(Doc. 175-10, p. 100). Based on this written policy, Wexford maintains that it does not have an unconstitutional policy or rule that impacted Carter's care. Carter argues, however, that Wexford has a *de facto* cost-cutting policy to deny collegial review for surgical repair of hernias, invoking the idea that Wexford has a widespread custom of refusing to refer patients for collegial review if their hernias are not strangulated or incarcerated, regardless of whether they cause pain.

Carter argues that Dr. David was responsible for the implementing the alleged widespread custom. Carter was not referred for collegial review for his hernia by Dr. David, who he describes as holding a policymaking role. Dr. David, however, as the medical director did not have final policymaking authority as contemplated by *Monell* and its progeny. The Seventh Circuit has explained, in a case addressing Dr. David's policymaking authority in his role as medical director at Shawnee, "He may have had the final say on Whiting's treatment plan and thus was the final-decisionmaker with respect to his care, but that's not nearly enough to show that he was the final *policymaker*." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016)(emphasis in original). As such, arguing that Dr. David had the final authority to implement the non-collegial review policy does not impute liability for the alleged custom to Wexford. The alleged

widespread custom itself must be shown to have some degree of acquiescence from an individual or entity with greater policymaking authority, and there is no evidence in the record of such a custom occurring with the assent of policymakers. To the contrary, Dr. David maintains that he chose not to refer Carter based on his opinion that surgery was not necessary. (*See* Doc. 161-5, p. 13-14).

Carter further argues that at the outset of this action there were 24 other inmates who also alleged that were denied surgical repair of their inguinal hernias, and he submits grievances filed by some or all of these inmates as evidence of a widespread custom. The issue for Carter is that allegations in a complaint or in grievances are not evidence that can demonstrate the existence of dispute of material fact at summary judgment. Instead, the evidence at this stage shows that Wexford had a written policy calling for case-by-case decision-making. Dr. David maintains that he did not refer Carter for collegial review because he, personally, saw no verifiable medical evidence that called for outside review, but he did not suggest that he was instructed by Wexford not to refer patients with medical needs for collegial review. There is no competent evidence before the Court to show that there was a widespread custom that was the "moving force" of Dr. David's decision not to refer Carter for collegial review. Without evidence to the contrary, no reasonable juror could conclude on the evidence currently before the Court that Wexford maintained an unconstitutional policy or custom that led to constitutionally insufficient medical care for Carter.

## CONCLUSION

For the above-stated reasons, Wexford's motion for summary judgment (Doc. 160) is **GRANTED**. At the close of the case, the Clerk of Court shall enter judgment in favor of Defendant Wexford Health Sources, Inc. and against Plaintiff Leander Carter. Defendant Alfonso David's motion for summary judgment (Doc. 157) is **DENIED**, and the claims against him shall proceed to trial. By separate notice, the Court will set a status conference to discuss potential trial dates and whether a settlement conference could prove fruitful.

The Court reminds Plaintiff that litigation often is viewed as a series of hurdles that Plaintiff must clear to get to another hurdle. Summary judgment is such a hurdle, but it is a very low one to clear. Clearing the summary judgment hurdle does not mean that the Plaintiff has won his case, nor does it mean that he is entitled to damages or other relief. As noted above, clearing the summary judgment hurdle only requires the existence of a dispute material fact as to Plaintiff's claim. At trial, he must prove that the disputed fact did, in fact, occur as he says it did. Trial is the highest and most difficult of hurdles for any plaintiff to clear.

**SO ORDERED.**

Dated: August 31, 2021

_____
DAVID W. DUGAN
United States District Judge